IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNIVERSAL PROTECTION SERVICES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-cv-00097-J |
| | § | |
| MARK THORNBURG; MIKE WEATHERL; and AGTAC SERVICES, LLC, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Duplicative Action*, filed on May 25, 2016. Plaintiff Universal Protection Services (UPS) responded on June 15, 2016. On June 28, 2016, defendant Thornburg filed *Defendant's Joinder of Co-Defendants' Motion to Dismiss, or in the Alternative, Transfer Duplicative Action*. The Court treats the Defendant's Joinder as a motion to dismiss or in the alternative motion to transfer. Defendants Mark Thornburg (Thornburg), Mike Weatherl (Weatherl), and AgTac Services (AgTac) then filed a Reply to Plaintiff's Reponse on June 29, 2016. Defendants Thornburg, Weatherl, and AgTac move pursuant to the "first to file" rule to dismiss this suit. In the alternative, Defendants move to transfer the entire suit, or the issue of how and whether the two actions should proceed, to the District of Nebraska. Thornburg, a Texas resident, filed notice with this Court stating he "will submit to the jurisdiction of the Court in Nebraska for the purposes of the claims made against him by Plaintiffs herein." Doc. 64, *Defendant's Joinder of Co-Defendants' Motion to Dismiss, or in the Alternative, Transfer Duplicative Action*. Defendants' Motions are GRANTED IN PART and DENIED IN PART.

1

## BACKGROUND

UPS is a national company that offers full-service security services to various property types including office buildings, corporate campuses, and distribution and manufacturing facilities. AgTac is a direct competitor of UPS, providing the same services to the same types of customers. AgTac currently employs former UPS employees and services former UPS customers across the country. UPS alleges that AgTac and Weatherl, a former UPS employee who currently owns and operates AgTac, lured UPS employees to breach employment contracts and disclose confidential information. Specifically, UPS alleges that current and former UPS employees disclosed sensitive pricing information that allowed AgTac to significantly underbid UPS and secure business contracts with former UPS customers.

On March 21, 2016, UPS sued Kelly Wavada (Wavada), Joel Lauffer (Lauffer), Leeta Suhr (Suhr), Weatherl, and AgTac in the District of Nebraska Lincoln Division (Nebraska Action). Wavada and Lauffer are former UPS employees now employed by AgTac. Wavada worked for UPS as a regional manager. Wavada's region included Nebraska and Texas, among others. UPS filed the Nebraska Action after AgTac underbid UPS and obtained contracts with former UPS customers.

UPS sued the Nebraska defendants for various causes of action. Specifically, UPS sued Wavada for breach of employment contract. UPS alleged Wavada breached the following employment contract provisions: non-competition; conflicts; non-solicitation of UPS customers and employees; and failure to maintain confidential information. UPS sued Lauffer, Suhr, and Weatherl for breach of employment contract for failure to maintain confidential information. UPS also brought a cause of action against Wavada, Lauffer, and Suhr for breach of the duty of loyalty. Further, UPS brought causes of action against all Nebraska defendants for tortious interference with contractual relations (employee and customer contracts), tortious interference with prospective

economic advantage, misappropriation of trade secrets, civil conspiracy, and violation of the Computer Fraud and Abuse Act.

While the Nebraska case was pending, UPS filed the instant suit (Texas Action) on May 19, 2016, against Thornburg, Weatherl, and AgTac. Thornburg works for UPS as the Director of Security at the JBS USA beef processing plant in Dumas, Texas (the Dumas Plant). Plaintiffs allege that Thornburg is also registered as owner, manager, and employee for AgTac on the Texas Department of Public Safety website. Wavada, while working for UPS as a regional manager in Texas, became familiar with the Dumas Plant and Thornburg. UPS brought the Texas Action after AgTac underbid UPS and obtained a contract with the Dumas Plant.

UPS sues Thornburg for breach of the duty of loyalty and breach of employment contract. UPS alleges that Thornburg breached the failure to maintain confidential information and conflicts clauses. Further, UPS sues Thornburg, Weatherl, and AgTac for misappropriation of trade secrets, violation of the Defend Trade Secrets Act, tortious interference with contractual relations (employee contracts), tortious interference with prospective business relationships, and civil conspiracy.

## DISCUSSION

Pursuant to the first to file rule, Defendants request that the Court dismiss or transfer the Texas Action to the District of Nebraska Lincoln Division, the court in which the first action was filed.

### A. Legal Standard

The Fifth Circuit adheres to the first-to-file rule when two related cases are pending in two federal district courts. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The first-to-file rule permits the court with the later-filed action to refuse to hear the case if the issues raised by both cases "substantially overlap." *See id.* "The rule rests on principles of comity and sound judicial administration." *Id.* (internal quotation marks omitted). The issues presented in

3

the two actions need not be identical and complete identity of the parties is not required for dismissal or transfer. *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 949–50 (5th Cir. 1997). Rather, "the crucial inquiry is one of substantial overlap." *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (internal quotation marks omitted).

Upon a motion invoking the first to file doctrine, the court must determine the likelihood of substantial overlap between the suit before it and the suit previously filed. If the second-filed court finds that the issues are likely to substantially overlap, it is up to the first-filed court to resolve the question of whether both cases should proceed. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). "The first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second-filed suit must be dismissed, stayed, or transferred and consolidated." *Cadle Co.*, 174 F.3d at 606 (internal quotation marks omitted). If a likelihood of substantial overlap exists, Nebraska is the appropriate court to decide whether the Texas Action should proceed or be dismissed, stayed, or transferred and consolidated. *See id.*; *Mann Mfg., Inc.*, 439 F.2d at 408; *Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 650 (N.D. Tex. 2010); *Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1369–70 (N.D. Ga. 2007). The Fifth Circuit reviews such decisions under an abuse of discretion standard. *See Save Power Ltd.*, 121 F.3d at 949–50.

This Court must limit its inquiry to whether there is a likelihood of substantial overlap between the two actions. District courts look at factors such as whether the core issues are the same or if much of the proof adduced would likely be identical. *See Int'l Fid. Ins. Co.*, 665 F.3d at 678 (citing *Mann Mfg., Inc.*, 439 F.2d at 407). When applying the first to file doctrine, district courts should "exercise care to avoid interference with each other's affairs as the concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister

4

courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (quoting *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)) (internal quotations omitted). The ultimate decision should reflect sound judicial administration. *See id.*

### B. Application of the First to File Rule

In the case at bar, Defendants demonstrate that a likelihood of substantial overlap exists. The actions involve identical plaintiffs and two common defendants, AgTac and Weatherl. The two pending lawsuits also bring many common causes of action with indistinguishable legal issues. Significantly, both actions share common central questions. Did current and former UPS employees breach employment contracts? Did Weatherl and AgTac: tortiously interfere with UPS's employment contracts and prospective economic advantage; misappropriate trade secrets; and commit civil conspiracy? UPS argues that despite common legal issues, overlap is limited because the two actions arose out of different circumstances and require distinct factual inquiries. For example, individual defendants independently breached the separate employment contracts and the Nebraska and Texas Complaints allege tortious interference with prospective business relationships by improper use of sensitive and proprietary information disclosed by unique defendants.[1] Thus, potential liability would be established by independent factual predicates.

The likelihood of substantial overlap remains despite the independent factual predicates. Evidence regarding the Dumas Plant, Thornburg, and Wavada are likely to be adduced in both the Nebraska and Texas actions. To begin, each action may determine whether Weatherl and AgTac misappropriated confidential information regarding the Dumas Plant. Additionally, the Nebraska Action may involve evidence pertaining to Thornburg and the Dumas Plant (did Wavada breach the

---

[1] Specifically, the Texas Action states "efforts to solicit new customers in Texas by utilizing *Thornburg's* inside knowledge of [UPS'S] pricing platforms . . . directly jeopardizes [UPS's] ability to compete . . . ." *Plaintiff's Original Texas Complaint*, p. 25 (emphasis added). The Nebraska Action states "efforts to solicit new clients in Nebraska by utilizing *Wavada's* inside knowledge of [UPS's] pricing platforms, directly jeopardizes [UPS's] ability to compete . . . ." *Plaintiff's Nebraska Complaint*, p. 72 (emphasis added).

UPS employment contract by soliciting Thornburg to work for AgTac and disclosing confidential information regarding the Dumas Plant; did the Nebraska defendants tortiously interfere with UPS's contract with the Dumas Plant?). Finally, the Texas Action may include evidence regarding the relationship between Thornburg, Wavada, and the Dumas Plant (did Thornburg breach the UPS employment contract by disclosing confidential information regarding the Dumas Plant to Wavada?). In fact UPS sought leave, which was ultimately granted, to depose Wavada in the Texas Action to support its motion for preliminary injunction.

## CONCLUSION

In sum, the Court finds that a likelihood of substantial overlap exists between the Texas and Nebraska actions. This Court must therefore transfer the case to the District of Nebraska Lincoln Division to determine whether the Texas Action should proceed or be dismissed, stayed, or transferred and consolidated. Therefore, *Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Duplicative Action* and *Defendant's Joinder of Co-Defendants' Motion to Dismiss, or in the Alternative, Transfer Duplicative Action* are GRANTED IN PART. This case is hereby transferred to the District of Nebraska Lincoln Division. All further relief not herein granted is DENIED.

IT IS SO ORDERED.

Signed this 22nd day of August, 2016.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE